IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**COLT FRANCIS WRIGHT,**

           **Plaintiff,**

v.                                      **CASE NO. 20-3079-SAC**

**KEVIN REAY,**

           **Defendant.**

### MEMORANDUM AND ORDER

This matter is before the Court for screening of Plaintiff's Amended Complaint (Doc. 11) and on Plaintiff's Motion for Issuance of Subpoenas (Doc. 16). The matter has been stayed because Plaintiff's claim of excessive force arose from the same incident that was the subject of an active state prosecution. (*See* Memorandum and Order, Doc. 5, for full explanation).

Plaintiff informed the Court that he accepted a plea agreement and was sentenced in October, 2021. He then filed a motion to withdraw his plea on the grounds that the leading agent for the Kansas Bureau of Investigation, which was brought in as an outside agency, had a previous 15-year employment with the Salina Police Department and on the basis of ineffective assistance of counsel. When his motion was denied, Plaintiff appealed the denial to the Kansas Court of Appeals. The appeal was filed in December of 2021 and remains pending.

However, Plaintiff's motion to withdraw his plea and the appeal do not appear to directly involve Plaintiff's claim that Defendant Reay used excessive force. Therefore, the Court finds it is appropriate to lift the stay and reopen this case for the purposes of issuing this Order.

1

**I. Amended Complaint and Factual Background**

According to the Amended Complaint, Defendant Reay, an officer with the Salina Police Department, had been told not to assist with "an incident" on February 5, 2019, but proceeded to the scene anyway and shot Plaintiff. Plaintiff alleges that he had fired no shots at the law enforcement officers ("LEOs") on the scene and was in the middle of a farm field facing away for the assembled LEOs. He states that he was "downed," but despite that fact, Defendant Reay put a magnifier over the sights of his rifle and fired again at Plaintiff because he was "still moving."

Plaintiff states that as a result of being shot, he suffered severe pain, bodily disfigurement, mental and physical trauma, separation from his family, near loss of his life, loss of bodily function, removal of his colon, removal of portions of his intestines, extensive scarring, loss of feeling in his right leg, permanent stomach problems, permanent disability, PTSD, loss of wages for life, and past, present and future medical expenses.

Plaintiff alleges Defendant Reay violated his rights under the Fourth, Eighth, and Fourteenth Amendments. He requests relief in the form of compensatory damages of $7,000,000 and punitive damages of $1,000,000.

It is obvious from the allegations in the Amended Complaint that Plaintiff omitted many necessary and relevant facts. The Court has examined all of the filings in this case to try to formulate a more complete picture. As to the "incident" which Plaintiff mentions, he states in the original Complaint: "A Jeep was reported stolen. Once said Jeep was located, circumstances escalated into a high speed chase with allegations of shots fired at police." Doc. 1, at 6. It turns out that the Jeep was being driven by Plaintiff. The Complaint also includes the following information: An announcement of "shots fired" was made over the police radio, then another report of shots fired was made minutes later, then another report a few minutes after that. The Jeep went

2

off the road and wrecked north of a "T" intersection, approximately 60 feet into a farm field. Reay arrived and heard shots. Reay and Officer Travis Henry both fired at Plaintiff as he ran away from the officers across the field and heading for the tree line. Plaintiff alleges he "had not fired any shots nor displayed any threatening mannerisms." *Id*. at 7. Plaintiff was hit during the "volleys of shots" in his lower right rear hip/pelvis area, dropping him. He was then hit twice more in the mid-back area. After Lt. Scott Anderson called for a ceasefire, Reay fired another shot. At least six officers reported seeing a gun close to Plaintiff as they approached him on the ground. *Id*. at 8. Events occurred at approximately 5:00 p.m.

Plaintiff also filed a report prepared by an investigator for the Kansas Bureau of Investigation ("KBI") (Doc. 14-1). That report includes the following information: Police dispatch announced a stolen car and that a gun was displayed at the time of the theft. Officer Baker reported locating the vehicle on I-35 near the Magnolia exit. Baker then announced over the radio that the vehicle had backed into him, disabling his patrol car. Reay and his partner, Christmas, began heading toward Baker. There were reports of shots fired. Reay and Christmas sought permission to assist with the chase. Sgt. Tonniges did not grant them permission to leave the city limits. They set up at the edge of city limits. Tonniges then reported over the radio that he had been shot at. Reay decided to respond to the area to assist. There was an announcement of additional shots fired. Upon arrival, Reay perceived that the suspect was concealing himself in the field's stubble lying down to continue to "attack" the LEOs.

Finally, the Court takes judicial notice of the fact that Plaintiff pled guilty to three counts of Attempted First Degree Murder, intentional and premeditated, and one count of Aggravated Battery – recklessly causing great bodily harm with a weapon. *See* online docket for Case No.

2019-CR-000142, Saline County District Court.  He received a controlling sentence of 360 months.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  "Prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).  Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency.  *See* 28 U.S.C. § 1915(e)(2).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise

a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in

this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Discussion

While Plaintiff asserts violations under the Fourth, Eighth and Fourteenth Amendments, the Fourth Amendment provides the applicable standard given Plaintiff's status as a criminal suspect being arrested without a warrant at the time of the incident. *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (citing *Porro v. Barnes*, 624 F.3d 1322, 1325-26 (10th Cir. 2010)); *Graham v. Connor,* 490 U.S. 386, 395 (1989). To state a viable excessive force claim under the Fourth Amendment, the plaintiff must allege "(1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Cortez v. McCauley,* 478 F.3d 1108, 1129 n.25 (10th Cir. 2007).

The reasonableness inquiry is an objective one and heavily fact dependent. *Graham*, 490 U.S. at 394. Moreover, reasonableness of the use of force is viewed from the perspective of a reasonable officer on the scene and includes an allowance for the fact that officers are forced to make split second judgments in tense, uncertain, and rapidly changing situations. *Id.* In analyzing whether a police officer used excessive force, the Court must determine whether the officer's actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The factors to be considered to determine reasonableness are the severity of the crime(s) at issue, whether the subject posed an

6

immediate threat to the safety of the officer or others, and whether the subject was resisting or attempting to evade arrest. *Jiron v. City of Lakewood,* 392 F.3d 410, 414–15 (10th Cir. 2004); *Graham,* 490 U.S. at 396.

Plaintiff has not stated a plausible claim for excessive force. While he asserts that Reay used greater force than necessary to seize him, that claim is not supported by the facts. Considering the reasonableness factors outlined in *Jiron*, Plaintiff stole a vehicle at gunpoint, lead LEOs on a high-speed chase, rammed a police vehicle, shot at LEOs multiple times during the high-speed chase, and was, in fact, convicted of three counts of attempted first degree murder. Reay had no reason to think that Plaintiff no longer posed an immediate threat to the safety of the assembled LEOs at the time he fired at Plaintiff. Last, Plaintiff was attempting to flee and by multiple accounts appeared to still have possession of a firearm at the time force was used.

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) (quoting *Tennessee v. Garner,* 471 U.S. 1, 11 (1985)). "Furthermore, a reasonable but mistaken belief that the suspect is likely to fight back justifies using more force than is actually needed." *Id.* at 1315. Moreover, Plaintiff pled guilty to multiple counts of attempted first degree murder, a severe crime that "inherently poses an immediate threat to the safety of officers." *Hooks v. Atoki*, 983 F.3d 1193, 1200 (10th Cir. 2020), *cert. denied,* 141 S. Ct. 2764, 210 L. Ed. 2d 909 (2021).

Plaintiff seems to be attempting to differentiate between firing shots at LEOs during the high-speed chase and what occurred after he crashed and began to flee on foot. While "the precise moment of the shot is a critical factor," the Tenth Circuit has found that "[i]t is the totality of the circumstances that is the touchstone of the reasonableness inquiry." *Thomson*, 584 F.3d at 1318

(citing *Phillips v. James*, 422 F.3d 1075, 1080, 1083-84 (10th Cir. 2005)).  The argument that Defendant may not have been in danger of serious bodily injury immediately prior to the time he shot Plaintiff because, according to Plaintiff's account, he did not shoot at the LEOs once he left the Jeep, is not persuasive.  The "tense, uncertain, and rapidly evolving" events leading up to that moment were "extremely relevant" in the totality of the circumstances approach.  *Id.* (citing *Phillips*, 422 F.3d at 1083–84).

Plaintiff also makes much of the fact that Reay allegedly disobeyed his superior by leaving the city limits and coming to the location where Plaintiff went off the road, wrecking the stolen vehicle, and began to flee on foot.  The Court does not see the relevance of Reay's disobedience.  Whether or not Reay was authorized to be there, he was a law enforcement official attempting to arrest Plaintiff for very serious crimes, there had been multiple reports of Plaintiff shooting at LEOs during the car chase, and Plaintiff was attempting to flee.

Here, the totality of circumstances indicates that it was reasonable for Reay to believe that Plaintiff was an immediate threat.  Even if the Court accepts Plaintiff's claim that Defendant Reay was mistaken in believing he still posed a threat, it was not objectively unreasonable for Reay to have formed that belief.  *See Thomson*, 584 F.3d at 1319.  The Court finds Plaintiff has failed to state a claim for excessive force under the Fourth Amendment.

In addition, the Court cannot discern from the Amended Complaint that the invalidity of Plaintiff's state convictions would not be implied by his claim that he was subjected to excessive force.  As noted, he does not reveal that he ultimately pled guilty to three counts of Attempted First Degree Murder, intentional and premeditated, and one count of Aggravated Battery – recklessly causing great bodily harm with a weapon.  Nor does he reveal if he defended these charges by

claiming excessive force or any defense based on the same facts as those that underlie his claims here.

The Tenth Circuit recently considered an excessive force claim where the plaintiff had plead no contest to two counts of assault and battery of a police officer. *Hooks*, 983 F.3d at 1201. The court found that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred Mr. Hooks from recovering damages based on the alleged uses of force because for him to prevail on his excessive force claim with respect to these uses, he would need to prove that it was unreasonable for the officers to defend themselves by subduing him. *Id.* "In other words, Mr. Hooks would need to show 'he did nothing wrong.'" *Id*. (quoting *Havens v. Johnson*, 783 F.3d 776, 783 (10th Cir. 2015)). "That inquiry would necessarily entail an evaluation of whether and to what extent Mr. Hooks used force against the officers, an inquiry that would take aim at the heart of his criminal plea, thereby violating the spirit of *Heck*." *Id*.

Plaintiff does not allege sufficient facts regarding his convictions or his own actions prior to and during his arrest to show that this Court's adjudication of the merits of his § 1983 excessive force claim would not call into question the lawfulness of his state convictions. If it would, then even if he had stated an actionable excessive force claim, it would be barred by *Heck* unless and until these convictions are overturned. *See Adams v. Dyer,* 223 F. App'x 757, 761 (10th Cir. 2007) (unpublished).

**IV. Conclusion**

For these reasons, the Court finds that the Amended Complaint is subject to dismissal for failure to state a claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Amended Complaint is **dismissed** for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Issuance of Subpoenas (Doc. 16) is **denied** as moot.

**IT IS SO ORDERED.**

DATED:  This 19th day of May, 2022, at Topeka, Kansas.


s/_Sam A. Crow_____
**SAM A. CROW**
**U.S. Senior District Judge**

10